NOTICE
Decision filed 05/25/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220254-U

NO. 5-22-0254

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CAROLYN TOTTEN, Individually and as Successor Co-Trustee of the Revocable Living Trust Agreement of Mary Lue Burgener, | ) ) ) ) | Appeal from the Circuit Court of Richland County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) ) | |
| v. | ) ) | No. 19-CH-15 |
| BILLY J. BURGENER, Individually, as Successor Co-Trustee of the Revocable Living Trust Agreement of Mary Lue Burgener, and as Trustee of the Billy J. Burgener Revocable Trust, | ) ) ) ) ) ) | |
| Defendant and Counterplaintiff-Appellant. | ) ) ) | Honorable Ray W. Vaughn, Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The orders of the trial court of Richland County are hereby affirmed where this court lacks a sufficient record to analyze the defendant-appellant's claims of error on appeal. Based on this finding, the orders of the trial court distributing the trust property, interpreting the provisions of the will, and denying the defendant's motion for order requiring the issuance of notice pursuant to section 7 of the Uniform Partition of Heirs Property Act (755 ILCS 75/7 (West 2018)) are affirmed.

¶ 2    This is an appeal from the circuit court of Richland County regarding the distribution of various real estate amongst the plaintiff and the defendant, who are brother and sister. The defendant raises three issues on appeal regarding the distribution of the trust real estate, the

1

interpretation of a will provision, and the applicability of the notice of sale provision of section 7 of the Uniform Partition of Heirs Property Act (Heirs Act) (755 ILCS 75/7 (West 2018)). For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On September 5, 2019, the plaintiff, Carolyn Totten, filed a complaint against the defendant, her brother, Billy Burgener, for construction of trust (count I) and partition (count II). The plaintiff and the defendant are the children of Myron Burgener and Mary Lue Burgener, who are both deceased. Prior to her death, on December 22, 1997, Mary Lue executed the Revocable Living Trust Agreement of Mary Lue Burgener (Trust). On November 22, 1999, she executed the First Amendment to Revocable Living Trust Agreement of Mary Lue Burgener (Amendment). Upon her death, the plaintiff and defendant became successor co-trustees pursuant to the terms of the Trust. The Amendment identified specific real estate that was to be distributed to the defendant—referred to as the Home 40—and the plaintiff was to receive "either a sum of money or a parcel of real estate to be selected by the trustees, of equal value" to the Home 40.

¶ 5    The dispute that led to this appeal arose from the language referring to the plaintiff. The trust neither specified whether the plaintiff had the right to choose between receiving the money or the real estate, nor did it specify how to resolve any dispute between the co-trustees over which parcel the plaintiff would receive if they could not agree. The plaintiff argued that she had the additional right to choose between the money or a parcel, and that, if she chose to receive land, she had the right to choose which parcel she would receive from the estate. The defendant, on the other hand, argued that he had to agree which parcel she would receive. The plaintiff asserted that she wanted a parcel of land, but she and the defendant could not agree on which specific parcel from the estate she would receive. Because of the ambiguous language in the trust, count I of the

2

plaintiff's complaint sought an order from the trial court determining the intent of the settlor in order to settle the dispute.

¶ 6     Count II involved 12 parcels, 5 from their uncle Marlyn Burgener's will and 7 through separate conveyances. As to the will property, the plaintiff and defendant each received an undivided one-half interest in approximately 180.5 acres from Marlyn Burgener's will upon his death. Marlyn's will stated that:

> "If either my niece or nephew wish to sell their interest in my real estate, I give the other the right to purchase his or her share for the sum of $1,500.00 per acre, or the appraised value, whichever is lower. If they cannot agree upon an appraised value, each of them shall appoint an appraiser to appraise the real estate and the two appraisals shall be averaged to procure the appraised value. It is my desire that no partition of my real estate shall be made during the lives of my said nephew and niece."

¶ 7     Count II of the complaint sought judgment on the following: (1) that the respective rights and interests of the parties in the above-described real estate be ascertained and declared by or under the direction of the court; (2) that a fair division and partition of the real estate be made between the parties according to their respective rights and interests; (3) that, in the interest of economy, a commissioner be appointed by the court to make such division and partition of the property pursuant to section 17-106 of the Code of Civil Procedure (Code) (735 ILCS 5/17-106 (West 2018)); (4) that, in case division or partition of the property, or any part thereof, cannot be made without manifest prejudice to the parties in interest, the same, or such part or parts that cannot be divided or partitioned, may be sold by or under the direction of the court, and the proceeds of the sale, after paying the costs and charges of this action, divided among the parties and all other persons who shall appear to have interests or rights in the property, according to their respective rights or interests in the proceeds as ascertained and declared by the court's judgment; and (5) that any other equitable and proper relief be granted.

3

¶ 8     On October 30, 2019, the defendant filed a motion to dismiss count I of the complaint pursuant to section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2018)), arguing that the terms of the Trust were not ambiguous. He also filed a motion to dismiss count II pursuant to section 2-615(a) of the Code (*id.*), arguing that the complaint failed to describe the premises sought to be divided and failed to set forth the interests of all parties interested in them. On January 22, 2020, the trial court heard argument on the defendant's motions to dismiss. The motions were denied.

¶ 9     On February 18, 2020, the defendant filed a motion for determination of the applicability of the Heirs Act (755 ILCS 75/3 *et seq.* (West 2018)). That same day, the defendant also filed an answer to count I of the complaint. On April 13, 2020, the trial court entered an agreed order resolving the motion and outlining the 12 tracts that were to be considered heirs property and therefore subject to partition under the Heirs Act.

¶ 10    On April 20, 2020, the defendant filed a motion to have the plaintiff removed as successor co-trustee of the Trust because her failure to distribute the Home 40 to the defendant constituted a serious breach of trust. On May 12, 2020, the defendant filed his answer to count II of the complaint. On August 26, 2020, the defendant filed a pretrial brief that included a proposed plan of distribution. Attached was the appraisal of the property prepared by William Carson. On August 27, the plaintiff filed an appraisal prepared by Brett Berger.

¶ 11    On August 28, 2020, the trial court heard arguments on all issues relating to count I, and specifically, on whether an ambiguity existed in the trust language. The court also heard testimony from both the plaintiff and the defendant. The plaintiff's argument was essentially that, although the tract she sought across the street from the Home 40 (ATS 40) was valued higher, it was more in line with the Home 40 as it had road access and access to utilities. Therefore, she argued that

4

the trust property should be split evenly as a whole, with her receiving the ATS 40. The defendant's argument revolved around the notion that only the Home 40 should be considered and that whatever the plaintiff received should only be close in price to that parcel, with the rest and residue split evenly between the parties. The plaintiff also testified that she was told by her mother that she would receive the ATS 40. The defendant testified that he was likewise told by their mother that he would be receiving the ATS 40 as well as the Home 40; however, the Trust only granted him the Home 40. The defendant asserted that their mother had a tendency to simply tell them each what they wanted to hear. The parties agreed, however, that there was a deadlock between them as co-trustees as to distribution and that the court should step in to break the deadlock. The court took all matters under advisement.

¶ 12    On November 16, 2020, the trial court entered a written order on the matters argued at the August 28, 2020, hearing. The court found that the language of the trust was not ambiguous. It further found that, under the terms of the trust, the defendant was to receive the Home 40; the plaintiff was to receive either a sum of money or a parcel of real estate, to be selected by the trustees, equal in value to the Home 40 already deeded to the defendant. The trust did not specifically state which tract of real estate the plaintiff should be deeded; therefore, the plaintiff's testimony that it was her mother's intention for her to receive "the forty acres across the street from the Home 40" (ATS 40) was not well taken and not accepted by the court where the clear and unambiguous language of the Amendment stated otherwise. The finding is supported by the facts that: (1) the trust language clearly stated and showed intent that a specific tract—Home 40—was to go to the defendant, and therefore, if the settlor intended for the plaintiff to similarly receive a specific tract, she knew how to ensure that and could have specifically identified any such tract she intended to specifically deed to the plaintiff; (2) any tract the plaintiff received had to be agreed

5

upon by the parties; (3) the choice/selection of whether the plaintiff received a sum of money or a tract of real estate was specifically intended by the settlor to be the choice of both trustees, not solely the plaintiff; and (4) the term "equal value" was not necessarily ambiguous where the meaning and ultimate decision as to what sum of money or which parcel of land the plaintiff would receive was a question of fact first, then an application of law. The court further found that all parties agreed that it was the duty of the court to partition/divide the real estate and money from the Trust in equal parts and that doing so would require an evidentiary hearing.

¶ 13 On February 9, 2021, the defendant filed a supplemental pretrial brief. On February 11, 2021, the plaintiff filed her prehearing memorandum. Both filings offered a proposed distribution of the real estate. Because the parties were unable to agree on distribution after the trial court entered its November 16, 2020, order, the court held an evidentiary hearing on February 11, 2021, to determine a fair distribution.[1] Following the hearing, the court entered the following via docket entry:

> "Court hears testimony from parties and Doug Totten. Matter taken under advisement. Counsel to file supplemental briefs regarding (1) importance/ enforceability/ applicability of language in Marlyn's Last Will which indicates that no partition of land devised by Marlyn to the parties is to occur; and (2) the ability of court to order parties to grant permanent easement(s) for access across land they jointly own, or across Trust land, for the benefit of the other, in anticipation of division or partition of lands. Counsel to submit briefs and any additional arguments, in writing to Court, by March 3, 2021."

¶ 14 On March 3, 2021, the plaintiff filed a supplementary brief. She reiterated her arguments regarding why she should receive ATS 40 where its access to both roads and utilities was more comparable to the Home 40 tract distributed to the defendant. She also again addressed the fact that, were the trial court to distribute the land to the parties as tenants in common, this would result

---

[1]The transcript for the February 11, 2021, hearing was not included in the record. This court, therefore, has no way of reviewing the evidence presented.

in further litigation as there was already a pending partition in count II of the complaint. However, she did note that the issue before the court was whether the language of Marlyn's will allowed for partition during the parties' lifetimes. She argued that the language of the will merely expressed a "wish" and was not a requirement prohibiting partition. She also argued that the court could find that an easement existed to allow for access across trust land that the parties owned jointly at that time.

¶ 15 The defendant also filed a supplemental brief addressing the two questions raised by the trial court following the February 11, 2021, hearing. The defendant's position was that the language of Marlyn's will had no effect on the court with regard to count I of the complaint, as it would only impact the partition claim. As to the easement issue, the defendant argued that the court had the authority to place easements on properties in the Trust as part of its plan of distribution. The defendant also took the position that the court did not have the authority to subdivide any tract as all were appraised as a whole.

¶ 16 On May 6, 2021, the trial court entered an order finding that the proper appraisal was the Berger appraisal for the purpose of determining distribution. It then distributed the Trust property as follows. To the plaintiff, the court distributed the ATS 40 and tracts 1, 2, and an eight-acre portion of tract 4, totaling a value of $585,600. To the defendant, the court distributed the remaining acres of tract 4, along with the Home 40 that had already been distributed to him, totaling a value of $595,400.

¶ 17 On June 3, 2021, the defendant filed a motion to reconsider and/or clarify the trial court's May 6, 2021, order. The defendant argued that the court's distribution did not keep with the settlor's intent; the court's valuation of the divided portion of tract 4 was not supported by the evidence; the court could not consider additional evidence, *i.e.*, a survey; the division of the Trust

7

assets was not equal; and division of the real estate would be more equitably resolved through a partition action. The defendant also filed a motion for determination of value of the real estate subject to the partition action in count II of the complaint pursuant to section 6 of the Heirs Act (755 ILCS 75/6 (West 2020)). On June 30, 2021, the plaintiff filed a response to the defendant's motion to reconsider and/or clarify the court's May 6, 2021, order. On August 29, 2021, the court entered an order to clarify, supplement, and replace its May 6, 2021, order. The order made substantially the same findings but clarified how tract 4 would be valued and divided.

¶ 18    On September 8, 2021, the defendant filed a motion for partial summary judgment on count II of the complaint. The motion alleged that five tracts were received from Marlyn's estate and that partition of these five tracts would violate a restriction in the Trust against partition. On September 8, 2021, the defendant filed a motion for leave to file a counterclaim. He sought to file a claim for partition as to the remaining seven tracts that were not included in the motion for partial summary judgment and also fixed an error in the legal description contained in the complaint filed by the plaintiff.

¶ 19    On September 29, 2021, the plaintiff filed her response to the defendant's motion for partial summary judgment. The response argued that the motion should be denied as a matter of law because the language in the will used the word "desire" and was therefore precatory and not mandatory. On September 30, 2021, the trial court granted the defendant leave to file a counterclaim. On October 20, 2021, the plaintiff filed a first amended complaint that was substantively the same as the original complaint but sought only division and partition of all 12 aforementioned tracts in the prayer for relief. The plaintiff also filed an answer to the defendant's counterclaim.

¶ 20    On December 16, 2021, the defendant filed a motion for declaration of farm tenancy rights in response to a notice to terminate farm tenancy sent to him by the plaintiff. The motion argued that the defendant was a farmer who had, currently and in the past for at least the last 20 years, farmed the tillable land of the five parcels that were the subject of the Trust, and that each tract was subject to a year-to-year oral farm tenancy in favor of the defendant. He further asserted that the notice to terminate the farm tenancy was invalid, and he sought a declaration from the court finding as such.

¶ 21    Also on December 16, 2021, the defendant filed a motion to dismiss the first amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). The defendant argued that the amended complaint filed by the plaintiff should be dismissed because the plaintiff pled the same cause of action yet changed her prayer of relief to retract the request for a sale by partition, which would have triggered section 7 of the Heirs Act and given the defendant the right to purchase the property from her at fair market value. The defendant asserted that because the change in the prayer for relief was improper, the amended count II should be stricken, and the original complaint should stand. The defendant also filed a notice of his intent to exercise his co-tenant buyout rights under section 7 of the Heirs Act.

¶ 22    Following a hearing,[2] on December 22, 2021, the trial court entered a written order finding that the language in the will that referenced partition was precatory, not mandatory, and accordingly denied the motion for partial summary judgment on the five tracts received under the terms of the will.

¶ 23    On January 6, 2022, the plaintiff filed a motion to dismiss the defendant's notice of intent to exercise co-tenant buyout rights, citing to the amended count II and her open intent that the

[2]The transcript for this hearing was not included in the record.

subject land not be sold, but rather partitioned in kind. The plaintiff also filed a response to the motion to dismiss the first amended complaint. The plaintiff cited *Jager v. Libretti*, 273 Ill. App. 3d 960 (1995), for the rule that a plaintiff may move to amend a prayer for relief even after judgment is entered, with the only issue being whether defendant would suffer any prejudice as a result of amendment. The plaintiff argued that, not only had the defendant not been prejudiced by the amended prayer for relief, but she had been clear from the beginning that she was seeking partition in kind.

¶ 24    On January 27, 2022, the trial court held a hearing on the pending motions.[3] Via docket entry, the court denied the defendant's motion to dismiss the first amended complaint and granted the plaintiff's motion to dismiss the defendant's notice of intent to exercise buyout rights based on its first ruling. As to the motion for determination of value, the court noted that the parties still could not agree on the valuation for all properties and ruled that if the parties were unable to agree by the next hearing, the court would order additional appraisals. The motion for declaration of farm tenancy rights was reset for hearing. On March 1, 2022, the defendant filed his answer to the first amended complaint.

¶ 25    On March 3, 2022, the trial court entered an agreed order determining the value of the heirs property, *i.e.*, the 12 tracts that were the subject of count II in the first amended complaint. On March 7, 2022, the defendant filed a motion for an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding to appeal the trial court's denial of his motion for partial summary judgment. The defendant also filed a motion for an order requiring the issuance of notice pursuant to section 7 of the Heirs Act where the court had entered an order of valuation under section 6 of the Heirs Act. On March 22, 2022, the plaintiff filed both a motion for a Rule 304(a) finding on the denial of the

_____

[3]The transcript for this hearing was not included in the record.

defendant's motion for partial summary judgment and a response to the motion for an order requiring issuance of notice under the Heirs Act requesting it be denied.

¶ 26     Following a hearing,[4] on March 20, 2022, the trial court entered written orders granting the two motions for Rule 304(a) findings[5] on agreement of the parties and denied the defendant's motion for order requiring issuance of notice under the Heirs Act. The defendant's motion for declaration of farm tenancy rights and the court's appointment of an appraiser were both continued until the resolution of this appeal. The defendant appeals.

¶ 27                                    II. ANALYSIS

¶ 28     The defendant raises three issues on appeal. First, the plan of distribution framed by the trial court to distribute the trust real estate assets was against the manifest weight of the evidence where it was inconsistent with the intent of the settlor, where there was no testimony as to the value of the tracts created by the trial court, and where a simpler and less burdensome way to distribute the property existed. Second, the court erroneously found that the restrictions in the will language did not prevent partition of the real estate received by the parties where the language was precatory and not mandatory. Third, the defendant was entitled to purchase the plaintiff's interests pursuant to section 7 of the Heirs Act.

¶ 29     At the outset, we note that the record before us is insufficient to review the defendant-appellant's claims of error. The appellant "has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). "[I]n the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id*. at 392. "Any

---

[4]The transcript for this hearing was not included in the record.
[5]According to the court's written order, an oral motion was made during the hearing.

11

doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id*. "[A] party's factual assertions in an appellate brief cannot serve as a substitute for a proper record." (Internal quotation marks omitted.) *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 82. Further, when no transcript of a pertinent hearing is obtainable, an appellant may present a bystander's report, or the parties may submit an agreed-upon statement of facts. Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 30    As stated, the defendant challenges three findings of the trial court. However, the appellate record contains no transcripts for four of the pertinent hearings during which evidence and argument was presented to the court. The record also contains no bystander's report or agreed-upon statement of facts describing what occurred at the hearings. Thus, there is nothing for this court to review or evaluate with respect to the evidence and argument for the defendant's claims of error. As stated, under such circumstances, we must presume the trial court's orders were entered in conformity with the law and had a sufficient factual basis.

¶ 31    Additionally, although we find the lack of a complete record fatal to the defendant's appeal, we also note that he failed to set forth a fully developed and reasoned analysis as to each of the issues he presented on appeal, further complicating review. See Ill. S. Ct. R. 341 (eff. Oct. 1, 2020). Rule 341 sets forth requirements for the form and content of appellate court briefs. *Id*. It provides that an appellant's brief must contain an "Argument" section that includes "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Bare contentions in an appellant's brief without "argument or citation of authority do not merit consideration on appeal." (Internal quotation marks omitted.) *Hollenbeck v. City of Tuscola*, 2017 IL App (4th) 160266, ¶ 27. Ultimately, "[a]ppellate courts are not depositories where litigants may dump the burden of

argument and research," and this court is "entitled to have the issues clearly defined and a cohesive legal argument presented." *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 82.

¶ 32    Here, the defendant presents nothing more than generic rule statements and conclusions not based on evidence presented to the court or contained in the record. The defendant fails to fully explain and support his contentions of error. He presents conclusory arguments, consisting of only a few sentences, and little or no relevant legal authority. Therefore, we are unable to conduct a proper review of this appeal and must assume the trial court was correct in its application of the law and findings of fact.

¶ 33                                    III. CONCLUSION

¶ 34    For the foregoing reasons, we affirm the order of the trial court of Richland County distributing the trust property, interpreting the provisions of the will, and denying the defendant's motion for order requiring the issuance of notice pursuant to section 7 of the Heirs Act.


¶ 35    Affirmed.